MOORE & als., *in Equity, versus* WARE.

Where one or more notes are given, secured by a mortgage of the maker, the mortgagee holds the estate in trust for the mortgager, charged with the mortgage debt.

So the assignee of a mortgage with *one* of the notes only, holds the estate in trust for the payment of *all* the notes it was made to secure.

And the mortgage is in itself notice to the assignee of the trust chargeable upon it, notwithstanding he may not know to whom the other notes may have been assigned.

BILL IN EQUITY, to which the respondent filed a general demurrer.

The bill alleged, that on the 10th day of April, 1835, Luther Dwinel, Albert Tibbetts and Jefferson Sinclair, gave to one M. P. Norton, their six notes of hand for $10359,38, payable in one, two and three years, with annual interest; and to secure the payment thereof mortgaged to him one-half of Township No. three, in the seventh range from the easterly line of the state in the county of Penobscot.

It further alleged, that two of said notes were paid by the makers as they became due, and that Norton, a short time after their date, and before they became due, indorsed and negotiated three of the six notes to certain persons, and the judgments recovered thereon were assigned to plaintiffs.

The bill further alleged, that Norton, on the 16th day of March, 1837, by deed, assigned to the defendant, all his right and interest in and to the said mortgage, and the land therein described, and as the plaintiffs believed and were informed, negotiated to him one of the " six notes" therein described, being for $1531,71.

Another allegation was, that defendant forthwith entered into possession of the mortgaged premises, and has so remained ever since, cutting large quantities of timber thereon, and receiving large rents and profits from the same, and in the months of July and August, 1839, foreclosed the same by advertising in a public newspaper, and has ever since claimed the same as sole owner.

The plaintiffs further alleged, that two of the makers of

the notes had become insolvent, and had been declared bankrupts under the United States Bankrupt Act, and the other died many years since in California, insolvent, and that they had no remedy for their debts, except upon the premises mortgaged to secure the payment.

The defendant was notified to account and arrange the whole prior to the commencement of the bill.

The bill concluded with a prayer that defendant might show cause why relief should not be granted — that a decree might be passed that he holds the mortgaged premises in trust for himself and these complainants, according to the several sums due — that he might account for the rents and profits, and convey to the complainants their just share of the estate.

*A. Sanborn,* in support of the demurrer, maintained —

1. Defendant was the purchaser of the estate without notice of the trust, and courts of equity will protect him against it. 2 Story on Equity, § 976, and cases cited in note 1, § 977, and note 1.

2. A purchaser without notice, and for a valuable consideration, is protected from such trusts by R. S., c. 91, § 32. The notes alone, nor the mortgage alone, do not constitute the trust, but both together.

3. No notice of the trust is alleged in the bill, or that defendant knew of the existence of the other notes.

*W. C. Crosby,* in support of the bill, cited *Johnson* v. *Candage & al.,* 31 Maine, 28; *Buck* v. *Swasey,* 35 Maine, 41.

TENNEY, J. — It is the well established doctrine in equity, that the debt is the principal, and the mortgage is the accessory. "If it should be assigned the assignee must hold the interest at the will and disposal of the creditor who holds the bond. *Accessorium non ducit, sed sequitur principale.*" "The control over the mortgaged premises must essentially reside in him who holds the debt." *Jackson* v. *Willard,* 4 Johns. 41; 2 Story's Equity, § 1016.

" The mortgagee in possession holds the estate strictly as a trustee, with the duties and obligations of a trustee." " He can make no gain nor profit out of the estate which he holds merely for his indemnity." 4 Kent's Com., Lecture, 58, p. 167 *et seq.* (4th ed.); *Holdridge* v. *Gillespie,* 2 Johns. Ch. 33. " He is treated so entirely as a trustee that he cannot exercise any right over the property mortgaged for his own benefit; but all acts done, and all profits made, are deemed to be for the benefit of the party who is entitled to the estate." 1 Story's Equity, § 1016; *Crane* v. *March,* 4 Pick. 131.

In courts of equity it is held, that the mortgagee holds the estate for the mortgager in trust, and when the debt is assigned he becomes a trustee for the benefit of the person having the interest in the debt. *Parsons* v. *Wells & al.* 17 Mass. 425.

By the foreclosure of a mortgage given for the security of two notes which have been separated by distinct negotiations, and the mortgage assigned to the indorsee of one, if the property mortgaged is equal in value to the amount of the two notes, the whole debt is paid. *Haynes* v. *Wellington,* 25 Maine, 458.

It follows from these principles, that where several notes are given, secured by a mortgage of the maker, the mortgagee holds the estate in trust, for the mortgager, charged with the mortgage debt. If the mortgagee negotiates one of the notes, he holds the mortgage in trust also for the indorsee. If he simply assigns the mortgage to secure the note transferred, with no agreement that the assignee shall hold it exclusively for the security of the note transferred, the assignor still holding the other notes, the assignee becomes trustee, and the mortgager as before, and the assignor, become *cestuis que trust.* The negotiation of the personal security makes the transfer thereof absolute with or without a liability of the indorser, as in other cases of indorsed notes. But the mortgage remains the security for all who are interested in the debt. Those to whom notes secured by the mortgage

are negotiated in such case, will take the place of the payee who indorses them.

The defendant invokes for his protection a well established principle in equity, that if a trustee disposes of the trust estate to a *bona fide* purchaser, for a valuable consideration, without notice of the trust, he will bar the interest of the *cestui que trust.* 2 Story's Equity, § 977. This principle the Legislature of this State have incorporated into the R. S., c. 91, § 32.

Again, it is insisted that if the mortgage and the notes constituted a trust estate, the complainants cannot be treated as the *cestuis que trust,* because at the time that the defendant took the assignment he had no notice that the three notes which have since passed into judgments, and are now claimed as their property, had been negotiated.

The two notes secured by the mortgage, which were made payable in one year, were paid by the makers at maturity. The mortgage was assigned to the defendant, with one of the other four notes before it became payable; and the estate has become absolute by foreclosure. The three remaining notes, according to the allegations in the bill, were negotiated soon after they were given, and before their maturity, but whether before or after the assignment of the mortgage does not distinctly appear, and it is not deemed material for the decision of the case as now presented.

The bill contains no allegation in terms, that the defendant was notified of the trust. This is unnecessary, when from other statements therein he must have had such notice.

A trust estate was created in pursuance of a provision of the statute, and declared such by the mortgager in the deed executed, and the note signed by him.

By the assignment of the mortgage the defendant was notified of every thing which appears therein. He was informed by that mortgage that it was given for the security of six notes, two of which were overdue if outstanding, and of the other four he purchased one, which, with the three remaining, had not then become payable. And the presump-

tion was, that the three last named were unpaid. He there-fore could not be treated as a purchaser without notice.

The trust having been created and declared by the mort-gage and the notes of which the defendant had notice, by the assignment, he became the trustee, and was bound to execute the trust, notwithstanding he might not have known with absolute certainty what persons were the *cestuis que trust* at the time he so became trustee. If the mortgagee had negotiated one of the notes, retaining in his own hands the mortgage, he would have held the relation of trustee of the one to whom he had transferred it, and when he assigned his interest in the mortgage to the defendant, the latter took the place of the mortgagee, and would not be discharged of his obligation to execute the trust by the want of knowledge to whom the note had been negotiated.

*Demurrer overruled.*

SHEPLEY, C. J., and HOWARD and HATHAWAY, J. J., concur-red.