ABRAHAM COLLERD

*v.*

ISAIAH A. HUSON et al.

Two purchase-money mortgages on the same premises were given and recorded simultaneously in September, 1859. One of them was payable in eight months, without interest, and was further secured by a surety on the bond. The other was payable in fifteen years, with interest. The surety paid his bond when it fell due, in May, 1860, but obtained no assignment of the mortgage until November, 1869, and did not record his assignment until November, 1875. The mortgagee assigned the other mortgage to B. in March,

Collerd *v.* Huson.

1868, and that assignment was recorded the same month.—*Held*, that the mortgages were concurrent liens; the fact that one became due before the other giving it no priority.

---

Bill to foreclose, and cross-bill. On final hearing on pleadings and proofs.

*Mr. W. B. Williams*, for Collerd.

*Mr. G. Ackerson, jun.*, for Brinkerhoff.

THE CHANCELLOR.

The controversy between the litigant parties is as to the priority of two mortgages given by Isaiah A. Huson to Isaac Goetschius, September 14th, 1859, on the same property, a farm in Bergen county, one for $2,000, payable May 1st, 1860, without interest, and the other for $4,500, payable in fifteen years from its date, with interest from the 1st day of May, 1860. These mortgages were given to secure part of the purchase-money of the mortgaged premises, which, at the date thereof, were conveyed by Goetschius to Huson. In the bond, the pay-

NOTE.—Mortgages on lands, given simultaneously, are concurrent liens, even when in the hands of different assignees, *Gausen* v. *Tomlinson, 8 C. E. Gr. 405*; *Vredenburgh* v. *Burnet, 4 Stew. Eq. 229, 7 Stew. Eq.* —; *Naylor* v. *Throckmorton, 7 Leigh 98*; *Lane* v. *Nickerson, 17 Hun 148*; *Pomeroy* v. *Latting, 15 Gray 435*; see *Gilman* v. *Moody, 43 N. H. 239*; *Riddle* v. *George (N. II.), 6 Reporter 757*; *Greene* v. *Warnick, 64 N. Y. 220*; *White* v. *Leslie, 54 How. Pr. 394*; *Freeman* v. *Shroeder, 43 Barb. 618*; *Van Rensselaer* v. *Stafford, Hopk. 569*; and so of chattel mortgages, *Howard* v. *Chase, 104 Mass. 249*; *Welch* v. *Sackett, 12 Wis. 243*; *Aldrich* v. *Martin, 4 R. I. 520*.

But not where one is a purchase-money mortgage, *Boyd* v. *Mundorf, 3 Stew. Eq. 545*; *Turk* v. *Funk, 68 Mo. 18*; *Bolles* v. *Carli, 12 Minn. 113*; *Clark* v. *Brown, 3 Allen 509*; see *Cake's Appeal, 23 Pa. St. 186*; *Ogden* v. *Walters, 12 Kan. 282*; *Lovett* v. *Demarest, 1 Hal. Ch. 113*; *Short* v. *Battle, 52 Ala. 456*.

In some states, where different debts, secured by the same mortgage, fall due at different times, they are to be paid according to their priority, *2 Jones on Mort. §§ 1699–1702*; also *Kyle* v. *Thompson, 11 Ohio St. 616*; *Winters* v. *Franklin Bank, 33 Ohio St. 250*; *Huffard* v. *Gottberg, 54 Mo. 271*; *Peoples Sav. Bank* v. *Finney, 63 Ind. 460*; *Doss* v. *Ditmars, 70 Ind. 451*; *Walker* v. *Schreiber, 47 Iowa 529*; *Richardson* v. *McKim, 20 Kan. 346*; *McClintic* v.

ment of which the $2,000 mortgage was made to secure, Collerd was surety. To his signature he added the word "surety." He paid off the bond on the 5th of May, 1860, and subsequently (but not until November, 1869) obtained from Goetschius an assignment in writing of it for his own security. That assignment was not recorded until November 11th, 1875. On the 14th of March, 1868, Goetschius assigned the $4,500 mortgage to Brinkerhoff for value. That assignment was recorded on the 17th of that month. Both mortgages were registered on the same day, and simultaneously. Collerd insists that his is entitled to priority over that of Brinkerhoff, and bases his claim on the allegation that it was understood when his mortgage was given that it was to be prior in lien to the other one, and he charges that Brinkerhoff took his assignment with notice of his right to priority. Collerd's claim to priority, as made by the pleadings, is denied by Brinkerhoff, and it is not maintained by the evidence. Collerd, on the one hand, swears that the understanding was, when the mortgages were given, that the $2,000 mortgage was to be the first encumbrance on the property; but Goetschius, on the other hand, testifies directly to the contrary. Huson, the only other living witness of the transaction, says

---

*Wise*, *25 Gratt. 448* ; *Marine Bank* v. *International Bank*, *9 Wis. 57* ; *Norris* v. *Beaty*, *6 W. Va. 483* ; *Belding* v. *Manly*, *21 Vt. 550* ; *Herrington* v. *McCollum*, *73 Ill. 476*.

But, in other states, the proceeds are divided *pro rata*, *Perry's Appeal*, *22 Pa. St. 43* ; *Lewis* v. *De Forest*, *20 Conn. 427* ; *Johnson* v. *Candage*, *31 Me. 28* ; *Carnahan* v. *Dyer*, *2 Am. Law Reg. 121* ; *Moore* v. *Ware*, *38 Me. 496* ; *Russell* v. *Carr*, *38 Ga. 459* ; *Davidson* v. *Allen*, *36 Miss. 419* ; *Ventress* v. *Creditors*, *20 La. Ann. 359* ; *Ellis* v. *Roscoe*, *4 Baxter 418* ; *Andrews* v. *Hobgood*, *1 Lea 693* ; *Smith* v. *Cunningham*, *2 Tenn. Ch. 565* ; *Eastman* v. *Foster*, *8 Metc. 19* ; *Paris Bank* v. *Beard*, *49 Tex. 358* ; *Delespine* v. *Campbell*, *52 Tex. 4* ; *Cooper* v. *Ulmann*, *Walk. Ch. 251* ; *English* v. *Carney*, *25 Mich. 178* ; *Phillips* v. *Mariner*, *5 Biss. 29*.

So where fractional parts of one debt are assigned, *Hancock's Appeal*, *34 Pa. St. 155*.

The assignment of one note or bond carries with it a *pro rata* portion of the mortgage, *Stevenson* v. *Black*, *Sax. 338* ; *Phelan* v. *Olney*, *6 Cal. 478* ; *Sample* v. *Rowe*, *24 Ind. 208* ; *Swartz* v. *Leist*, *13 Ohio St. 419* ; *Anderson* v. *Baumgartner*, *27 Mo. 80* ; *Terry* v. *Woods*, *6 Sm. & M. 139* ; *Walker* v. *Schreiber*, *47 Iowa 529* ; *McLanahan* v. *Chambers*, *1 Mon. 43* ; *Stockton* v. *Johnson*, *6 B. Mon. 408* ;

Collerd *v.* Huson.

that he always supposed that the mortgage which became due first was first in order of priority, because it became due first; that he supposed the $2,000 mortgage was the first; that his recollection is not clear as to what was said on the subject, but that was his impression on the subject. Goetschius appears to have had the same notion as Huson, that where two mortgages are given simultaneously on the same property, that which will become due first will therefore rank first, but thought it might be deprived of priority by recording it after the other. On the sale of the property by Goetschius to Huson, the former insisted upon receiving a cash payment of $2,000. Huson could not make it. Goetschius agreed to accept instead thereof a bond for the $2,000, payable in May following, provided Collerd would become surety on it, which he did accordingly. Goetschius swears that he intended that the $4,500 mortgage should be registered first, so that it would outrank the other mortgage, and that he gave such direction when he left the mortgage for registry. If he gave such direction, it appears to have been disregarded. As before stated, the proof does not establish Collerd's claim of priority for the $2,000 mortgage. Seeing that the mortgages were registered simultaneously, they are to be re-

*Duncan* v. *Louisville, 13 Bush 378;* Woodruff v. King, 47 Wis. 261; see Stewart v. Crosby, 50 Me. 130; Page v. Pierce, 26 N. H. 317; unless otherwise stipulated, Grattan v. Wiggins, 23 Cal. 16; Beresford v. Ward, 1 Disney 169; Bank of England v. Tarleton, 23 Miss. 173; Noyes v. White, 9 Kan. 640; Bryant v. Damon, 6 Gray 564; Henderson v. Herrod, 10 Sm. & M. 631; Foley v. Rose, 123 Mass. 557; Langdon v. Keith, 9 Vt. 299; Rolston v. Brockway, 23 Wis. 407.

In some instances the date of the assignment fixes the priority, irrespective of the date of the instrument, *Cullum* v. *Erwin, 4 Ala. 452;* Bank of Mobile v. Planters Bank, 9 Ala. 645; Nelson v. Dunn, 15 Ala. 501; Griggsby v. Hair, 25 Ala. 327; Lyman v. Smith, 21 Wis. 674.

A cancellation of record protects a *bona fide* purchaser of the premises against any unpaid notes in the hands of assignees, *Ayres* v. *Hays, 60 Ind. 452;* Gregory v. Savage, 32 Conn. 250.

A mortgage may be foreclosed for an overdue installment of the principal, *American Life Ins. Co.* v. *Ryerson, 2 Hal. Ch. 9;* Adams v. Essex, 1 Bibb 149; Watkins v. Hackett, 20 Minn. 106; Salmon v. Clagett, 3 Bland 125; Mussina v. Bartlett, 8 Port 277; Baker v. Lehman, Wright 522; King v. Longworth, 7 Ohio 131; or for one of several notes, *Johnson* v. *Brown, 31 N. H. 405;* Kennedy

garded as concurrent liens. Goetschius swears that Collerd
applied to him previously to the time when the assignment to
the latter was made, and requested him to make it, and he swears
that he told Collerd that he was willing to do so, provided it
would not affect his right to priority in respect to the $4,500
mortgage, and that Collerd replied that the assignment would
not affect that mortgage ; that he did not want to hurt Goet-
schius, and that the property was worth the amount of both
mortgages ; but Collerd denies this wholly. Goetschius also
swears that when he assigned the $4,500 mortgage to Brinker-
hoff, he had no idea that the $2,000 mortgage was in existence,
and Brinkerhoff testifies that Goetschius " gave him to under-
stand," when he took the assignment of that mortgage, that it
was the first and only encumbrance on the property, and he
adds that if he had not believed that it was the only lien he
would not have taken it. The weight of evidence is that when
Collerd paid off the mortgage he took the bond into his pos-
session, and directed the attorney in whose office the payment
was made, and who was acting for Goetschius, to draw an as-
signment from Goetschius to him of the mortgage, and Goet-
schius then promised him that he would go to the lawyer's office

v. *Hammond, 16 Mo. 341; Tinsley* v. *Boykin, 46 Tex. 592; Pepper* v. *Dunlap,
16 La. 163; Gibbons* v. *Hoag, 95 Ill. 45;* see *Noyes* v. *Barnet, 57 N. H. 605;*
and such proceeding will not bar a subsequent foreclosure for other install-
ments, *Allen* v. *Wood, 4 Stew. Eq. 103; McDougal* v. *Downey, 45 Cal. 165;
Skeltow* v. *Ward, 51 Ind. 46; Smith* v. *Osborn, 33 Mich. 410; Magruder* v.
*Eggleston, 41 Miss. 284; Darrow* v. *Scullin, 19 Kan. 57; Kemerer* v. *Bournes,
53 Iowa 72; McDougall* v. *Downey, 45 Cal. 165;* see *West's Appeal, 88 Pa. St.
341; Hubbard* v. *Jarrell, 23 Md. 66;* but see *Kimmell* v. *Willard, 2 Doug.
(Mich.) 217; Cox* v. *Wheeler, 7 Paige 248; Buford* v. *Smith, 7 Mo. 489; Powe-
shick Co.* v. *Dennison, 36 Iowa 244; Robins* v. *Swain, 68 Ill. 197; Fowler* v.
*Johnson (Minn.), 9 Reporter 445; Wilson* v. *Hayward, 2 Fla. 27.*

A payment of the installment terminates the suit, *Brown* v. *Thompson, 29
Mich. 72;* see *Dow* v. *Moor, 59 Me. 118.*

A mortgage may be foreclosed for interest before the principal is due, *Van
Doren* v. *Dickerson, 6 Stew. Eq. 388; Valentine* v. *Van Wagner, 37 Barb. 60;
Stafford* v. *Maus, 38 Iowa 133; Butler* v. *Blackman, 45 Conn. 159; Glass* v.
*Warwick, 40 Pa. St. 140; Bank* v. *Johnson, 53 Cal. 99; Mahn* v. *Hussey, 1
Stew. Eq. 546; Bookman* v. *Burnett, 49 Iowa 303; Hunt* v. *Dohrs, 39 Cal. 304.*
—Rep.

A. B. *v.* C. B.

and sign it. He did not get the assignment, however, until 1869.. And while it is true · that when Brinkerhoff took his assignment Goetschius appeared of record to be the owner of the $2,000 mortgage, yet that mortgage was uncanceled, and stood uncanceled of record. It was not produced by Goetschius to Brinkerhoff, nor its absence in any way accounted for. Collerd, as the surety in the bond, had a clear equity to the mortgage security for it, which Goetschius held. Brinkerhoff made no inquiry on the subject, but relied on what, as he says, Goetschius led "him to understand," which was that the $4,500 mortgage was the first and only encumbrance ; but he does not even remember that any reference was made to the $2,000 mortgage. Collerd was then entitled to be subrogated to the rights of Goetschius under the last-mentioned mortgage, and he has not lost his right by any act or dereliction. ·There will be a decree that the mortgages are concurrent liens.

---

## A. B.

*v.*

## C. B.

1. In order to give jurisdiction, the divorce act requires that the parties, or one of them, must have been an inhabitant of this state at the time of the injury, desertion or neglect complained of, &c.—*Held*, that an incurable impotence existing at the time of the marriage, was a *continuing* injury and gave jurisdiction, although neither of the parties was an inhabitant of the state when the marriage was contracted.

2. The parties were married in 1865, and the defendant (the wife) successfully resisted all efforts for intercourse for about five years. Some time afterwards her impotence was discovered, and complainant induced her to submit to a surgical operation therefor, which was performed in 1877, but without success. In 1879 complainant became satisfied that defendant was incurably impotent, and in 1880 filed a bill for divorce on that ground.—*Held*, that his claim to relief had not been forfeited by delay.